UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANKLIN BERNARD SHAW,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO.  C13-917-RSM-JPD<br><br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Franklin Bernard Shaw appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-nine year old man with the equivalent of a high school education. Administrative Record ("AR") at 34, 39. His past work experience includes employment at Restaurant Depot as a shelf stocker. AR at 35.

REPORT AND RECOMMENDATION - 1

Plaintiff protectively filed a claim for SSI payments on January 12, 2010, which is also his alleged onset date. AR at 10, 127-33.[1] Plaintiff asserts that he is disabled due to mental impairments and a shoulder impairment. AR at 152.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 10, 49-52, 57-58. Plaintiff requested a hearing, which took place on December 22, 2011. AR at 10, 30-46. On January 20, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 7-24. The Appeals Council denied plaintiff's request for review, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 30, 2013, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

---

[1] Although plaintiff initially alleged disability since September 9, 2009, he is ineligible for SSI disability benefits for any month preceding January 2010, the month he filed his SSI disability benefits application. 20 C.F.R. §§ 416.330; 416.335. During the hearing, plaintiff amended his alleged onset date to his filing date. AR at 33.

REPORT AND RECOMMENDATION - 2

1  (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

2  medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

3  53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

4  whole, it may neither reweigh the evidence nor substitute its judgment for that of the

5  Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

6  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

7  must be upheld. *Id.*

8  The Court may direct an award of benefits where "the record has been fully developed

9  and further administrative proceedings would serve no useful purpose." *McCartey v.*

10 *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

11 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

## IV.  EVALUATING DISABILITY

As the claimant, Mr. Shaw bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

REPORT AND RECOMMENDATION - 3

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.  EVALUATING DISABILITY

As the claimant, Mr. Shaw bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On January 20, 2012, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since January 12, 2010, the application date.

2. The claimant has the following severe impairments: right acromioclavicular osteoarthritis and spur of distal right clavicle.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). He can lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently. He can stand and/or walk with normal breaks for a total of about six hours in an eight hour workday. He can sit with normal breaks for a total of about six hours in an eight hour workday. The claimant can frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs. He can occasionally climb ladders, ropes or scaffolds. He must avoid concentrated exposure to extreme cold, wetness, vibration, and hazards such as machinery and unprotected heights.

5. The claimant has no past relevant work.

6. The claimant was born on XXXXX, 1962 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[3]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 12, 2010, the date the application was filed.

AR at 12-22. (Footnotes omitted)

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by finding that plaintiff did not have a medically determinable mental impairment at step two?

2. Did the ALJ err by failing to find plaintiff's mental health impairments severe at step two?

3. Did the ALJ err by failing to find that plaintiff met the listing for mental retardation?

4. Did the ALJ err in evaluating the medical opinions of Dr. Dees, Dr. Clark, and Dr. Hopfenbeck?

5. Did the ALJ err in evaluating Dr. West's opinion by failing to explain why he did not limit the RFC in a manner consistent with Dr. West's opinion?

6. Did the ALJ err in evaluating plaintiff's credibility?

7. Did the ALJ err in assessing plaintiff's RFC?

Dkt. 16 at 2.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

VII.   DISCUSSION

A.   <u>The ALJ Erred by Finding that Plaintiff Did Not Have a Medically Determinable Mental Impairment at Step Two</u>

Plaintiff assigns error to the ALJ's step two finding that the "claimant has no medically determinable mental impairment." AR at 18. At step two, a claimant must make a threshold showing that he has medically determinable impairments that significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).[4] "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

Plaintiff argues that the ALJ erred by rejecting the opinions of three examining and treating psychologists and psychiatrists who relied upon medically accepted diagnostic techniques and objective testing to diagnose several medically determinable mental impairments, including major depressive disorder and personality disorder. Plaintiff asserts that the ALJ further erred by relying instead upon the nonexamining State agency psychologists' opinion that they could not determine if plaintiff had a medically determinable

---

[4] "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28).

REPORT AND RECOMMENDATION - 7

1  impairment. Dkt. 16 at 3.  Specifically, plaintiff points out that the ALJ inaccurately states that

2  the State agency psychologists' opinions were "based upon a comprehensive review of the

3  longitudinal record," AR at 15, when their review omitted at least 100 pages of pertinent

4  medical records, including the treatment notes and assessment of plaintiff's treating

5  psychiatrist. Dkt. 16 at 6.

6  In addition, plaintiff argues that the ALJ erred by citing with approval the State agency

7  psychologists' reliance upon a "call to [plaintiff's] probation officer," who reported that he

8  "has been working with [plaintiff] a couple of months and has not observed any of the odd

9  behaviors or psychosis noted in the [evaluations]." AR at 282.  Plaintiff asserts "the record

10 does not contain even the name of the individual whose report is being relied upon," and "the

11 legal authorities do not contemplate or support the use of third party reports, particularly from

12 a source of whom nothing is known regarding professional qualifications, to determine

13 whether an impairment is medically determinable." Dkt. 16 at 6.

14 The Commissioner responds that the ALJ's step two finding was a reasonable

15 interpretation of the medical evidence, because the ALJ permissibly relied upon the opinions of

16 the nonexamining State agency psychologists Sharon Underwood, Ph.D. and Gerald L.

17 Peterson, Ph.D. Dkt. 18 at 7 (citing AR at 15, 270-83, 336-37). Specifically, in March 2010

18 Dr. Underwood "noted significant discrepancies" between the medical evidence of record from

19 plaintiff's period of incarceration with the DOC and his presentation during more recent

20 evaluations, and found that "due to lack of consistency, unable to rate, nor able to determine if

21 [a medically determinable impairment] exists." AR at 15, 282.  Her opinion was affirmed by

22 Dr. Peterson in October 2010. AR at 336-37.  The ALJ asserted that he "adopt[ed] their

23 findings in determining that the claimant has no medically determinable mental health

24 impairment" because "their opinions are based upon a comprehensive review of the

REPORT AND RECOMMENDATION - 8

longitudinal record" and they are "considered experts in the Social Security Disability programs and their opinions are well supported by the medical evidence." AR at 15. Although the Commissioner concedes that "Dr. Underwood and Dr. Peterson did not have the opportunity to review the entire record," as incorrectly stated by the ALJ, the Commissioner argues the ALJ's error was harmless because the nonexamining psychologists "relied upon specific evidence of record" in forming their opinions and "the ALJ did . . . consider[] the entire record in making his findings." Dkt. 18 at 8 (citing AR at 15-18).

The ALJ described the diagnoses of examining and treating physicians Drs. Clark, Dees, and Hopfenbeck, but rejected these physicians' opinions based upon "the clear indicators of malingering [by the claimant]; the claimant reporting no mental health symptoms until he got out of prison and needed services and benefits." AR at 16, 18. The ALJ noted that "Medical records from the State of Washington Department of Corrections (DOC) generated between June 2003 and March 2009 have no indication of any mental health complaints or diagnoses and no observations of any mental health issues." AR at 13. In addition, the ALJ pointed to a provisional diagnosis of malingering by examining psychologist Cassandra Clark, Ph.D., because plaintiff's presentation during her psychological examination "was not entirely credible although there was no objective evidence to contradict it." AR at 14, 254-55. The ALJ concluded that in the context of plaintiff's prison notes, Dr. Clark's "provisional" diagnosis of malingering seemed apt and therefore rejected the opinions of Drs. Clark, Dees, and Hopfenbeck because he believed that plaintiff was motivated by secondary gain. As mentioned above, the ALJ adopted the opinions of State agency consultants Drs. Underwood and Peterson instead, noting in particular Dr. Underwood's remarks about her call to plaintiff's probation officer and the fact that this person had "not observed any of the odd behaviors or psychosis noted in the [evaluations]." AR at 15.

REPORT AND RECOMMENDATION - 9

Dr. Clark conducted a psychological evaluation on January 28, 2010, which included psychometric testing such as administration of the Folstein Mini-Mental Status Evaluation and Beck Depression Inventory. AR at 253-59. Dr. Clark observed that plaintiff "presented as dim and vacant with prolonged response latencies" and noted his self-report that he was seen at age 18 "for counseling and medication because of hearing voices . . . He reports that, when with other people, he hears them talking about him and believes that are watching him." AR at 253. She diagnosed major depressive disorder (recurrent, severe, onset in childhood), personality disorder with antisocial features (onset in adolescence, early adulthood), and "rule out" cognitive disorder NOS. AR at 255. She also included "provisional" diagnoses of malingering and schizophrenia. AR at 255. As noted above, Dr. Clark observed that "his presentation was not entirely credible although there was no objective evidence to contradict it," AR at 254, and commented that "because of the concern about malingering, it is recommended that Mr. Shaw be approved for benefits for a short period of time, then be evaluated again, in order to compare his second performance and presentation to the current one." AR at 257. She further recommended that a "neurobehavioral cognitive status examination" be administered to further assess his possible cognitive impairment. AR at 254, 257.

Following Dr. Clark's assessment, examining psychologist Dr. Dees completed a complex psychological assessment with extensive objective testing on March 9, 2010. AR at 260-69. Specifically, Dr. Dees noted that his "procedures utilized/administered consisted of a clinical interview with Franklin; Wechsler Adult Intelligence Scale – Third Edition (WAIS-III); Wechlser Memory Scale-Third Addition (WMS-III); Trails A & B; and Metal Status Exam (MSE)." AR at 260. Dr. Dees was aware of Dr. Clark's concern about the possibility of malingering, as he reviewed Dr. Clark's January 2010 psychological evaluation (as well as

REPORT AND RECOMMENDATION - 10

plaintiff's adult function report) prior to conducting his testing. AR at 260. He nevertheless found that "the results of testing are felt to be a valid and accurate representation of Franklin's current cognitive functioning based on observed effort and motivation." AR at 263.

Dr. Dees' testing revealed a verbal IQ score of 69, performance IQ score of 67, and a full scale IQ score of 65, which is consistent with the severity required to meet the Listing 12.05(C) for Mental Retardation if the other listing criteria are satisfied. AR at 263-65.[5] Plaintiff also consistently performed in the "extremely low" to "borderline" range across his objective testing, showing severe impairment in intellectual functioning, learning, and memory. AR at 263-67. Dr. Dees diagnosed schizophrenia (paranoid type), mood disorder NOS, cognitive disorder NOS, extremely low intellectual functioning, and personality disorder NOS. AR at 269.

Similarly, plaintiff's treating psychiatrist, Dr. Hopfenbeck, conducted a psychiatric examination on February 11, 2011. AR at 359-62. Dr. Hopfenbeck noted plaintiff's report that he felt "depressed and anxious in prison, [and] did talk with mental health staff there once or twice, but did not get much attention; avoided looking vulnerable or mentally ill in prison due to concern for his safety." AR at 359. Dr. Hopfenbeck diagnosed major depression

---

[5] Specifically, the Court notes that Listing 12.05(C) requires an ALJ to find that the plaintiff satisfies three elements: (1) a valid verbal, performance, or full scale IQ score of 60 through 70; (2) a physical or other mental impairment; and (3) subaverage general intellectual functioning with evidence of adaptive functioning deficits that manifested themselves before the age of 22. 20 C.F.R. Pt. 404, Subpt. P.App. 1 at § 12.05. A formal diagnosis of mental retardation is not necessary to meet a 12.05 Listing. *See Christner v. Astrue,* 498 F.3d 790, 793 (8th Cir. 2007). Here, plaintiff apparently has three IQ scores which would satisfy the first requirement of Listing 12.05(C). In addition, the ALJ found that plaintiff has an additional severe impairment, right acromioclavicular osteoarthritis and spur of distal right clavicle, which constituted a severe impairment and would satisfy the second requirement. AR at 12-13. Finally, the record reflects that plaintiff finished only the tenth grade, required special education classes in math, and reportedly took many years to obtain his GED, which could possibly satisfy the third Listing criteria. As discussed further below, the ALJ is directed to reevaluate plaintiff's mental impairments on remand, and in particular, consider whether plaintiff meets a Listing.

REPORT AND RECOMMENDATION - 11

(severe, recurrent, with psychotic features), panic disorder with agoraphobia, cocaine dependence in early full (3 month) remission, and antisocial traits. AR at 359-60.

The Court finds that without more, the fact that plaintiff's mental health conditions were not detected or documented in his DOC prison records was not a specific and legitimate reason for the ALJ to reject these three physicians' opinions and conclude that plaintiff has no medically determinable mental impairments. Just one of many possible explanations for the absence of mental health diagnoses in plaintiff's DOC records was plaintiff's comment to his treating psychiatrist, Dr. Hopfenbeck, that he did not seek out mental health treatment in prison because he wished to avoid being viewed as vulnerable or mentally ill out of concern for his safety. AR at 359.

In addition, plaintiff's point is well-taken that an unknown probation officer's statement that he had not observed "odd behaviors or psychosis" in the "couple of months" he had known the plaintiff is an improper basis for the ALJ to reject plaintiff's examining and treating physicians' diagnoses of medically determinable impairments. AR at 282. As discussed above, a medically determinable impairment is established by medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov*, 420 F.3d at 1005. Here, Drs. Dees and Clark, in particular, conducted extensive objective testing and concluded, based upon signs and symptoms, that plaintiff had several medically determinable mental impairments. The ALJ has not articulated any basis, apart from the discrepancy between these doctors' opinions and plaintiff's DOC records, why the results of these physicians' extensive objective testing should be considered invalid. In this context, the ALJ's reliance upon the opinions of the nonexamining state agency physicians, who did not conduct a "comprehensive review of the longitudinal record" as alleged by the

1  ALJ and who indicated that they could not determine if plaintiff had medically determinable
2  mental impairments (and did not actually opine that plaintiff has none and is malingering) was
3  misplaced.

4        Finally, although Dr. Clark made a "provisional" diagnosis of malingering, AR at 255,
5  she further indicated that "there was no objective evidence to contradict" plaintiff's
6  presentation, AR at 254, and therefore recommended that plaintiff actually be approved for
7  benefits until he can be evaluated again for purposes of comparison. AR at 257. Dr. Dees
8  appears to have been aware of Dr. Clark's concerns, but nevertheless found that "the results of
9  testing are felt to be a valid and accurate representation of Franklin's current cognitive
10 functioning based on observed effort and motivation." AR at 263. Without more, plaintiff's
11 prison records, a statement by an unnamed probation officer, and Dr. Clark's "provisional"
12 diagnosis of malingering do not constitute substantial evidence to support the ALJ's finding
13 that plaintiff has no medically determinable mental impairments despite the results of extensive
14 objective testing by plaintiff's treating and examining physicians.

15       Accordingly, the ALJ erred by rejecting the opinions of Drs. Clark, Dees, and
16 Hopfenbeck at step two without specific and legitimate reasons, and this case must be
17 REMANDED for further administrative proceedings. On remand, the ALJ shall re-evaluate
18 the medical evidence of record, including evidence relating to whether plaintiff has any
19 medically determinable mental impairments at step two. If the ALJ continues to be concerned
20 about potential malingering by the plaintiff, the ALJ is directed to obtain additional
21 consultative examinations with psychometric testing (including testing for malingering).
22 Finally, as discussed above, the ALJ is directed to specifically consider whether plaintiff meets
23 a listing, such as Listing 12.05(C).

24

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14)** days of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on April 18, 2014.

DATED this 3rd day of April, 2014.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge